UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOHN DOE,

                                          Plaintiff,

     -against-

RENSSELAER POLYTECHNIC INSTITUTE ("RPI"),
ELIZABETH BROWN-GOYETTE, Title IX Investigator,
LARRY HARDY, Title IX Coordinator,
TRAVIS APGAR, Assistant Vice President and Dean of Students,
LENORMAN STRONG, Special Assistant to the President, AND
PETER KONWERSKI, Vice President for Student Life at RPI

                                          Defendants.

---

## MEMORANDUM OF LAW

### Civil Action No. 1:19-CV-719 (BKS/DJS)

---

Submitted by:
Michael E. Ginsberg, Esq.
Rhiannon I. Spencer, Esq.
**PATTISON, SAMPSON, GINSBERG & GRIFFIN, PLLC**
*Attorneys for Defendants*
22 First Street, P.O. Box 208
Troy, New York 12181-0208
(518) 266-1001

TO:    Scott W. Iseman, Esq.
         O'Connell and Aronowitz, PC
         54 State Street, 9th Floor
         Albany, NY 12207

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

STATEMENT OF THE FACTS ....................................................................................1

ARGUMENT

PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUCTION ...............................8

   A.    Preliminary Injunction Standard ...................................................................8

   1.    Substantial Likelihood of Success on the Merits ....................................10

       a.    Title IX .....................................................................................................11

       b.    Breach of Contract ..............................................................................22

   2.    Irreparable Harm and Balancing of the Equities ....................................24

   3.    Public Interest .......................................................................................24

CONCLUSION ..............................................................................................................25

## TABLE OF AUTHORITIES

### Cases

Adams v. Whitney,
  2008 WL 189905 (NDNY 2008) ........................................................................8, 15

Doe #1 v. Syracuse University,
  2018 WL 3193199 (NDNY 2018) .............................................................................25

Doe v. Colgate,
  2017 WL 4990629 (NDNY 2017) *aff'd* 760 Fed. Appx. 22 (2d Cir. 2019).................13, 15, 21

Doe v. Coll. Of Wooster,
  243 F. Supp.3d 875 (N.D. Ohio 2017) ...................................................................15

Doe v. Quinnipiac University,
  2017 WL 1206002 (D. Conn. Mar. 31, 2017) ...........................................................9

Doe v. Rensselaer Polytechnic Institute, *et al*,
  No. 1:18CV1374 (FJS) (NDNY 2019) .....................................................................9

Eng v. Smith,
  849 F.2d 80 (2d Cir. 1988) .................................................................................9

Grand River Enter. Six Nations,
  481 F.3d 60 (2d Cir. 2007) ................................................................................24

Harrison and Burrowes Bridge Constructors, Inc. v. Cuomo,
  743 F. Supp. 977 (NDNY 1990) ...........................................................................9

Hess v. Bd. Of Trs.,
  839 F.3d 668 (7th Cir. 2016) ............................................................................21

Main St. Baseball v. Binghamton Mets Baseball Club,
  103 F. Supp.3d 244 (NDNY 2015) ........................................................................25

Mitchell v. New York University,
  129 AD 3d 542 (1st Dept., 2015) ......................................................................10

Patrick v. Success Academy Charter Schools, Inc.,
  354 F. Supp.3d 185 (EDNY 2018) .......................................................................21

Powe v. Miles,
  407 F 2d 73 (2nd Cir., 1968)............................................................................10

Rensselaer Soc'y of Eng'rs v. Rensselaer Polytechnic Insts.,
  689 NYS 2d 292 (3rd Dep't 1999) ..............................................................7, 13, 22

ii

Routh v. Univ. of Rochester,
   981 F Supp. 2d 184 (WDNY 2013)............................................................................22

U.S. v. Thorn,
   317 F.3d 107 (2d Cir. 2003) ...................................................................................9

Xiaolu Peter Yu v. Vassar Coll.,
   97 F Supp. 3d 448 (SDNY 2015) ...........................................................................11

Yu v. Vassar Coll.,
   97 F Supp. 3d 448 (2015) ...........................................................................10, 11, 22

## Statutes

N.Y. Educ. § 6443 ("Enough is Enough")..................................................................16

N.Y. Educ. Law § 6444(5)(c)(ii) ..............................................................................16

## Other Authorities

2015 Sess. Law News of N.Y. Ch. 76 (S. 5965) (McKINNEY'S) ("Enough is Enough")............14

## STATEMENT OF THE FACTS

In the instant matter, Plaintiff seeks a preliminary injunction to enjoin Defendants from imposing sanctions upon him due to the finding by two independent administrative bodies at RPI that he violated RPI's Student Sexual Misconduct Policy and Procedures. (Student Sexual Misconduct Policy and Procedures attached to Hardy Aff. as Ex. "A").

On October 1, 2018 Rensselaer student, Jane Roe 1, reported to the Rensselaer Department of Public Safety that on or about September 1, 2018 at an outdoor location on Rensselaer's Troy campus, fellow student John Doe, Plaintiff herein, kissed her and placed his hands on her neck and squeezed her neck, obstructing her breathing, both without her affirmative consent. Jane Roe 1 further alleged that on the same date, John Doe held her down on his bed in his residence hall room, touched her breasts and genitals, and rubbed his groin against hers, all without her affirmative consent. Jane Roe 1 also alleged that on or about September 22, 2018 on a public sidewalk or street in downtown Troy, John Doe kissed her without her affirmative consent. (*See* Public Safety Report attached to Hardy Aff. as Ex. "B").

In conformance with its policy and obligations under Title IX, the complaint was reviewed and on October 1, 2018 a No Contact Order was issued to both the complainant and Plaintiff as the respondent in the matter.  (No Contact Order attached as Exhibit "C" to the Hardy Aff.) Upon receipt of said No Contact Order, Plaintiff sent an email response denying any wrongdoing. (*See* Email attached to Hardy Aff. as Ex. "D").

Shortly after the No Contact Order was issued on October 1, 2018, notices were issued to both the complainant and Plaintiff herein which provided "this is to inform you that RPI has received a complaint alleging that you violated the Sexual Assault provision of the Student Sexual Misconduct Policy of Rensselaer. Specifically, it was alleged that on or about September 20, 2018 at an outdoor location on Rensselaer's Troy campus, you kissed a female student and squeezed her

1

neck, obstructing her breathing, without her affirmative consent. It was further alleged that on or about the same date, inside [John Doe's Residence Hall], you held the same female student on a bed, preventing her from leaving, put your hand under her pants, and touched her genitals also without her affirmative consent. Therefore, the Institute will be conducting a formal investigation. Please be advised that the Institute is required to consider any additional allegations that come to light during the investigation." (*See* Notice attached to Hardy Aff. as Ex. "E").

Pursuant to RPI's Student Sexual Misconduct Policy, the Institute commenced the required investigation into the complaint made against Plaintiff.

Pursuant to RPI's Student Sexual Misconduct Policy and Procedures, the Case Management Team ("CMT") consisted of Larry Hardy, Travis Apgar, and Jackie Turner. (Sect. III (I), p. 21, Ex. "A" to Hardy Aff.).

Due to the nature of the allegations, sexual assault, the instant matter could not be resolved through an informal process and required a formal investigation.  (Sect. III (J), p. 22, Ex. "A" to Hardy Aff.).

Pursuant to RPI's Policy, the CMT appointed Elizabeth Brown-Goyette, and Matthew Lewis as the investigative team for the complaint.  (Sect. III (K) p. 23, Ex. "A" to Hardy Aff.).

In accordance with RPI's Student Sexual Misconduct Policy, students who are involved in a Title IX investigation can obtain an advisor/ support person or have the Institute appoint one for them.  In the subject investigation Jane Roe 1 requested her mother as her advisor.

On October 2, 2018, the interview of Jane Roe 1 ("JR1") was scheduled with Investigators Elizabeth Brown-Goyette and Matthew Lewis. When a student opts to have an advisor, who has knowledge about the incident being investigated, it is typical for said advisor to be interviewed prior to the complainant and outside complainant's presence. (*See* Witness 1 Transcript attached

2

to Hardy Aff. as Ex. "F"). Such was done in this investigation in conformance with procedures; not as a form of gender bias as alleged.

After JR1's advisor/mother was interviewed, JR1 was interviewed and provided details concerning the allegations. (Jane Roe 1 Transcript attached to Hardy Aff. as Ex. "G").

During the interview, JR1 named a number of individuals who had knowledge about the incidents in question, and such individuals were contacted for interviewing.

Witnesses 2—5 were interviewed at the behest of Complainant Jane Roe 1. (Transcripts attached to Hardy Aff. as Exs. "H", "I", "J", "K"). Witnesses 6 and 7 were interviewed at the behest of Respondent John Doe. (Transcripts attached to Hardy Aff. as Exs. "M" and "N").

During Witness 3's interview, they named a person who had knowledge about another female student who allegedly had a similar unwanted sexual encounter with John Doe. Pursuant to the policy, the Investigators contacted said person and requested an interview.

On October 11, 2018, Witness 8, the individual Witness 3 identified (also referred to as Witness A) identified three additional female students who had reported similar unwanted encounters/ sexual experience with Plaintiff herein. (Witness 8 transcript, Ex. "O" to Hardy Aff.).

On October 24, 2018, John Doe (Plaintiff herein) was interviewed regarding the allegations made by Jane Roe 1. (John Doe transcript attached to Hardy Aff. as Ex. "P").

As required by Title IX and RPI's Student Sexual Misconduct Policy, the Title IX Investigators requested to interview the women identified. Of the three identified women, one agreed to an interview.  On October 24, 2018, Jane Roe 2 ("JR2") was interviewed and provided a detailed account of her experience with Plaintiff. (Jane Roe 2 Transcript, Ex. "Q" to Hardy Aff.).

During JR2's interview, she informed the Investigators that she filed an anonymous complaint back on February 20 regarding this incident. (*See* Anonymous Report submitted Feb.

3

20, 2018 attached to Hardy Aff. as Ex. "R").  Additionally, after JR2's interview, she stated that she no longer wanted to participate in the possible investigation concerning Plaintiff herein. Based on RPI's Policy, such was relayed to the CMT which determined that, due to the nature of the allegations, it was in the Institute's best interest to proceed with an investigation as required by Title IX. (*See* Notice to CMT attached to Hardy Aff. as Ex. "S", *see also* Correspondence by the CMT electing to move forward with Jane Roe 2's Investigation attached as Ex. "T" to Hardy Aff.).

On October 31, 2018, pursuant to RPI's Student Sexual Misconduct Policy, a notice was sent to Plaintiff informing him that a second individual had made allegations that he violated such Policy. (Notice of Jane Roe 2 Investigation attached to Hardy Aff. as Ex. "U").  Said notice stated: "This is to inform you that Rensselaer Polytechnic Institute has received a complaint alleging that you violated the Sexual Assault provision of the Student Misconduct policy of Rensselaer. Specifically, It was alleged that in or about February 2018 inside [Residence Hall] on Rensselaer's Troy campus, you held a female student down on a bed, preventing her from moving or objecting, while engaging in sexual intercourse without her affirmative consent, and that you kissed the same female student without her affirmative consent. Therefore, the Institute will be conducting a formal investigation. Please be advised that the Institute is required to consider any additional allegations that come to light during the investigation. (Ex. "U" to Hardy Aff.).  Said notice further provided identical information regarding the investigation as the first notice for the Jane Roe 1 investigation.

Pursuant to RPI's Student Sexual Misconduct Policy, the Institute commenced the required investigation into the complaint made against Plaintiff by Jane Roe 2.

Pursuant to RPI's Student Sexual Misconduct Policy and Procedures, the CMT for the Jane Roe 2 Investigation consisted of Larry Hardy, Travis Apgar, Jackie Turner, and Stanley Dunn. (Sect. III (I), p. 21, Ex. "A" to Hardy Aff.).

Pursuant to RPI's Policy, the CMT appointed Elizabeth Brown-Goyette, Eliza Chaknis, and Matthew Lewis, as the investigative team for the second complaint. (Sect. III (K), p.23, Ex. "A" to Hardy Aff.).

On November 16, 2018, Plaintiff and his advisor met with Title IX Coordinator, Larry Hardy, and expressed concerns with having Elizabeth Brown-Goyette and Matthew Lewis as Investigators into JR2's complaint. (*See* attached as Ex. "V" to Hardy Aff.). While students have the right to object to Investigators, such objections must be based on a demonstrated conflict of interest. (Sect. III (H)(4), p.22, Ex. "A" to Hardy Aff.). Plaintiff provided no reasonable explanation for his request to remove Elizabeth Brown-Goyette nor Matthew Lewis and as such, his request was denied. (*See* Corr., Ex. "W" to Hardy Aff.).

In connection with the investigation into Jane Roe 1's complaint and pursuant to RPI's Policy, on or about January 26, 2019, the Investigators provided a Summary of Evidence the to the Case Management Team. (Report attached as Ex. "X" to Hardy Aff.).

Said Summary of the Evidence provided a detailed analysis of the evidence and a discussion regarding the credibility of witnesses as permitted by policy but did suggest a final determination on whether Plaintiff violated the subject Title IX policy. (Ex. "X" to Hardy Aff.).

Although Plaintiff asserts that the credibility assessment tainted the investigation, a reading of the credibility narrative shows a balanced critique of both Jane Roe 1 and John Doe. For example, the report draws attention to the fact that the complainant's statements changed slightly over time which the complainant addressed in her interview by stating that it was her attempt at minimizing the situation. The report further stated, that based upon two reputable articles, minimization is a tactic that may occur when a victim is traumatized however, the report cautioned that, "the alternative interpretation, that complainant exaggerated her subsequent descriptions of

5

the incident, cannot be entirely discounted."   Additionally, the report addressed Plaintiff's inconsistencies, particularly where he completely omitted the entire sexual encounter between he and the complainant in his original response to the No Contact Order. (Ex. "X" to Hardy Aff.).

During the pendency of the two investigations, on January 9, 2019, Plaintiff took a leave of absence from the Institute for an unspecified amount of time. (Ex. "Y" to Hardy Aff.).

On January 30, 2019, the CMT rendered its determination in connection with the first investigation that based on a preponderance, of the evidence it was more likely than not that Plaintiff violated the Student Sexual Misconduct Policy. (Ex. "Z" to Hardy Aff.).

On February 7, 2019, Plaintiff sent an email to Larry Hardy objecting to the findings and requesting an appeal to the Hearing Board. (Email attached to Hardy Aff. as Ex. "AA").

The Hearing Board consisted of LeNorman Strong, designated to serve as chair, Tracey Leibach, and Jacqueline Stampalia. (Sect. III, N(3), p. 28, attached as Ex. "A" to Hardy Aff.).  The Hearing Board was provided with a copy of the original investigative report that was redacted to contain only the summary of the evidence, the redacted versions of the interview transcripts, and the evidence submitted in connection with the investigation. (*See*, Appendix A to Policy attached to Hardy Aff. as Ex. "A").

Contrary to Plaintiff's assertions, the Hearing Board does not review the credibility assessment contained in the Investigative Report, the citations to the articles regarding victims and trauma which Plaintiff takes exception to, unredacted versions of the interview transcripts, nor the identity of Witness 8/ Witness A.  (Hardy Aff. ¶ 46).

Pursuant to the policy, both parties submitted a list of the witnesses to be interviewed by the Hearing Board. Plaintiff submitted the names of two witnesses who were not originally interviewed. While Plaintiff alleges that such individuals were not interviewed during the

6

investigation by Elizabeth Brown-Goyette and Matthew Lewis because of gender-bias, Plaintiff stated during his interview that neither witness had direct knowledge about the events that transpired between he and Jane Roe 1. (Plaintiff's Transcript attached to Hardy Aff. as Ex. "P", p. 63 L. 17; p. 69 L. 21; p. 72 L. 2).

Plaintiff takes exception because his sister was not interviewed, but, as Plaintiff stated in his interview, she never met Jane Roe 1 and all information she had was memorialized in text messages that Plaintiff submitted to the Investigative Team. (*See* Investigative Report Ex. "X" to Hardy Aff.).  Nonetheless, both witnesses provided testimony during the Hearing.

Plaintiff further requested an expert to testify before the Hearing Board because, as Plaintiff alleges, the Investigative Report introduced "expert, or at the very least specialized evidence, against Plaintiff" by citing to two publications regarding trauma and its effects on victims of sexual assault. (Complaint ¶¶ 166 & 169).  Such request was denied pursuant to RPI policy because (1) the citations to the publications were not included in the report reviewed by the Hearing Board; and (2) pursuant to the policy, "witnesses must have observed the conduct in question or have information relevant to the incident." (Appendix A to the Policy, p. 23, Ex. "A" to Hardy Aff.).

These hearing are not trial and there is no right to present expert testimony. Absent gender bias there is no ability to attack the determination of the Hearing Board since no Article 78 proceeding commenced which must be obtained in State Court. Rensselaer Soc'y of Eng'rs v. Rensselaer Polytechnic Insts., 689 NYS 2d 292, 295 (3rd Dep't 1999)

The Hearing was held on April 12, 2019. (¶ "55", Hardy Aff.). On April 24, 2019, the Hearing Board rendered its determination that it was more likely than not that Plaintiff violated the Sexual Misconduct Policy on September 20, 2018 while in his dorm room; 1 of the 3 incidents alleged in the complaint.  (*See* Ex. "BB" to Hardy Aff.).

Pursuant to the Policy, such determination was submitted to the Vice President of Student Life who confirmed the finding and determined that the sanction of suspension effective April 24, 2019 through December 31, 2019 for the summer 2019 and fall 2019 semesters. (Sect. III N(4), p. 28, Ex. "A" to Hardy Aff.).  On April 29, 2019, Plaintiff was informed of said determination.

After being informed of the Hearing Board's determination, Plaintiff sent a correspondence requesting to appeal the Hearing Board's finding based on a number of unsupported alleged procedural violations.  (Appeal Request attached to Hardy Aff. as Ex. "CC").

Pursuant to the Policy, both the complainant and respondent may appeal the outcome of the Hearing however, the "only grounds upon which an appeal may be based are" (1) procedural error or (2) based upon new information.  Importantly, "dissatisfaction with the outcome of the proceeding is not grounds for an appeal." (Sect. III P, p. 29, Ex. "A" to Hardy Aff. as).

On May 23, 2019, Defendant Peter Konwerski, V.P. for Student Life, responded to Plaintiff's appeal request by addressing each alleged procedural flaw and ultimately concluding that no such procedural errors occurred thereby denying Plaintiff's requested appeal. (Letter attached to Hardy Aff. as Ex. "DD").

Importantly and with regard to the complaint of Jane Roe 2, on May 10, 2019, Plaintiff was informed that based on a preponderance of the evidence, it was more likely than not that Plaintiff did not violate the Student Sexual Misconduct Policy as alleged in Jane Roe 2's complaint. (Notice for Jane Roe 2 Investigation attached to Hardy Aff. as Ex. "EE").

## PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

### A.  Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Adams v. Whitney, 2008 WL 189905 (NDNY 2008) (internal citation and quotes omitted).

A party seeking a preliminary injunction must show the following:

> "(1) 'a likelihood of success on the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved by the issuance of an injunction.'"

Doe v. Rensselaer Polytechnic Institute, *et al*, No. 1:18CV1374, \*4 (FJS) (NDNY 2019) *quoting*

Doe v. Quinnipiac University, 2017 WL 1206002, \*4 (D. Conn. Mar. 31, 2017).

"However, other factors have been considered by courts which may operate to increase the burden upon a party seeking preliminary relief." Harrison and Burrowes Bridge Constructors, Inc. v. Cuomo, 743 F. Supp. 977, 996 (NDNY 1990).  For example, "where injunctive relief does not merely maintain the status quo, but rather grants the movant substantially all the relief he ultimately seeks, a more stringent standard is required—the movant 'must show a substantial likelihood of success on the merits, *i.e.,* that [his] cause is considerably more likely to succeed than fail (together, of course, with the requisite irreparable injury).'" Eng v. Smith, 849 F.2d 80, 83 (2d Cir. 1988) *quoting* Abdul Wali v. Coughlin, 754 F.2d 1015, 1026 (2d Cir. 1985), *overruled on other grounds*; *see also*, U.S. v. Thorn, 317 F.3d 107, 117 (2d Cir. 2003).

In the case at bar, Plaintiff's application for a preliminary injunction seeks to enjoin the Defendants, during the pendency of this action, from enforcing any and all sanctions Defendants intend to impose and are imposing against Plaintiff, including suspensions from school and his persona non grata status. (*See* Plaintiff's Order to Show Cause).

While Plaintiff urges the Court to utilize the "less rigorous fair ground for litigation standard," Plaintiff fails to acknowledge that his application for injunctive relief seeks almost all of the relief he ultimately requests therefore, Plaintiff "must show a substantial likelihood of success on the merits. . ." Eng, 849 F.2d at 82.

At the outset, Plaintiff does not make an argument on the likelihood of success on the merits, only that the matter is "fair ground for litigation" which is a clear indication that Plaintiff himself does not believe in the potential for success and is simply trying to raise an issue.

Furthermore, this Court should deny Plaintiff's request because Plaintiff provides no competent evidence to the court beyond self-serving conjecture through his attorney's affirmation, a potential witness to the foregoing matter, and the unverified Complaint in an attempt to satisfy his burden of establishing by a clear showing that he is entitled to the relief requested.

### 1. Substantial Likelihood of Success on the Merits

Plaintiff asserts claims for violation of his (1) Due Process and Equal Protection rights under Title IX by claiming (a) an erroneous outcome from a flawed proceeding, (b) selective enforcement of RPI's policy; and (2) breach of contract.

Plaintiff cites to no case law in support of his contention that Defendants violated his Due Process and Equal Protection rights under Title IX or that he was entitled to the procedures he asserts were violated. Furthermore, Plaintiff cannot incorporate unsworn allegations from the Complaint as facts and as such, he fails to create *any* dispute of the facts. (*See* Iseman Aff. ₱2).

First, Plaintiff cannot establish a likelihood of success on the merits with regard to his Due Process claims as "[p]rivate colleges … are not bound by constitutional due process." Yu v. Vassar Coll., 97 F Supp. 3d 448, 466 (2015). It is well settled law that "Neither private universities nor their employees are 'state actors' for the purpose of constitutional claims". Mitchell v. New York University, 129 AD 3d 542, 544 (1st Dept., 2015), *citing* Powe v. Miles, 407 F 2d 73, 80-81 (2nd Cir., 1968).

RPI is a private educational institution and thus, neither it nor its' employee, could possibly have violated plaintiff's Due Process or Equal Protection rights. Therefore, plaintiff has not demonstrated a likelihood of success on the merits of such claim.

### a. *Title IX*

Since "Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to 'bar the imposition of university discipline where gender is a motivating factor in the decision to discipline.'" Doe v. Columbia University, 831 F.3d 46, 54 (2d Cir. 2016) *quoting* Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994).

Courts have held that "[u]nlike with Title VII of the Civil Rights Act of 1964, which provides private rights of action against both intentional discrimination (known as 'disparate treatment') and practices that, while not intentionally discriminatory, have a disproportionately adverse effect on a protected class (known as 'disparate impact')." Xiaolu Peter Yu v. Vassar Coll., 97 F Supp. 3d 448, 461 (S.D.N.Y. 2015).

"In the context of university discipline, the Second Circuit has recognized two categories of Title IX claims: (1) claims of an erroneous outcome from a flawed proceeding, and (2) claims of selective enforcement." Yu, 97 F Supp. 3d at 466.

### i. ***Erroneous Outcome***

With respect to the first category of Title IX claims, an erroneous outcome from a flawed proceeding, "a party asserts that he or she was innocent and wrongly found to have committed the offense." Yu, 97 F Supp. 3d at 466.

"[T]o establish a claim of discrimination under Title IX, a plaintiff must ultimately show that the defendant discriminated against him . . . because of sex; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' the for the defendant's actions." Id. (internal citations omitted). "It is not enough to show that policy or practice disproportionately affects one sex." Columbia Univ., 101 F.Supp. 3d at 367.

Importantly, "[p]laintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." Yusuf, 35 F.3d at 715.

"[A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss[;] [t]he fatal gap is, again, the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias." Id.

Plaintiff fails to allege any facts "sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." Id.   Importantly, Plaintiff was found to have violated RPI's Student Sexual Misconduct Policy by two independent investigative bodies at RPI.

The Hearing Board determined that it was more likely than not that the incident inside John Doe's dorm room occurred. The finding was based upon the fact that JR1's story was corroborated by her roommate. There were inconsistencies with John Doe's account. In his email to Larry Hardy, John Doe made no mention of he and Jane Roe 1 going to sit in the truck on Campus and kissing nor going to his room where the sexual encounter occurred; he only stated that the two discussed philosophy and then JR1 went home. (See Ex. "DD" to Hardy Aff.).

John Doe also claimed that JR1 stayed in his room until 11:00pm but that account could not be corroborated with any other evidence. In fact, it was directly contradicted by two other reports; Witness 4, JR1's roommate and Witness 9, John Doe's friend. John Doe also made the claim that JR1 and her friends were ganging up on him due to his religious beliefs which he claims is the real reason JR1 filed the complaint against him however, no evidence supported the claim.

Fact finders found the Complainant's version of events more credible.   Importantly, it is beyond the Court's purview to second-guess the weight the [Hearing Board] afforded individual

pieces of evidence and the credibility determinations that it made; rather, the Court's role is to consider whether these determinations were motivated by gender bias." Yu, 97 F. Supp. 3d at 477. "Judicial scrutiny of the determination of disciplinary matters between a university and its students, or student organizations, is limited to determining whether the university substantially adhered to its own published rules and guidelines for disciplinary proceedings so as to ascertain whether its actions were arbitrary or capricious." Rensselaer Soc'y of Eng'rs, 689 NYS 2d 292

### *Gender Bias*

"To demonstrate an erroneous outcome or gender based discrimination claim, the plaintiff must provide evidence indicating that 'gender [was] a motivating factor in the decision to discipline.'" Doe v. Columbia, 831 F.3d at 53 *quoting* Yusuf, 35 F 3d at 715.

Critically, even if the unsupported allegations by Plaintiff herein were true, "evidence of bias against the accused in sexual misconduct hearings does not equate to bias against men." Doe v. Colgate, 2017 WL 4990629, *11 (NDNY 2017) *aff'd* 760 Fed. Appx. 22 (2d Cir. 2019) (*summary order*); Columbia, 831 F.3d at 57 ("observing that, while allegations that a hearing process favored victims over the accused may 'support the inference of bias, they do not necessarily relate to bias on account of sex.'").

Plaintiff alleges, without evidence, that RPI faced pressure from the community and State and Federal Governments on the way it handled Title IX investigations which "caused RPI to develop an education, training, investigation, adjudication and resolution process that was directly and indirectly designed to discriminate against male students on the basis of their sex . . ." which ultimately caused Plaintiff's proceeding to be tainted by gender bias. (Complaint ⁋ 52).

- ### *Alleged Community Pressure*
  Plaintiff attempts to equate the instant matter to Doe v. Columbia, 831 F.3d 46 by asserting in the Complaint that "[p]rior to Plaintiff's matriculation into RPI in the fall of 2017 and during

13

his time as a student, RPI received extensive criticism for its handling of sexual violence on campus [and] [said] criticism came from both the campus community and local media" and "RPI faced pressure from the federal government and the State of New York to do more to combat sexual violence on campus." (Complaint ¶¶ 37 & 46). Plaintiff further alleges, with no basis in fact and upon information and belief that (1) "student protests, rallies and other public demonstrations have embarrassed RPI and its Title IX process prior to Plaintiff enrolling at RPI and these actions caused RPI to change its Title IX process in the discriminatory manner as described herein"; and (2) RPI was investigated by the Office of Civil Rights ("OCR") and/or Department of Justice for its mishandling of sexual assault investigations, in particular with the way it handled female complainant's claims."

First and foremost, Plaintiff proffers no evidence to support his allegations regarding "student protests" that embarrassed RPI and its Title IX process because such is not true. (Hardy Aff. ¶ "77"). Furthermore, neither OCR nor the Department of Justice has ever determined that RPI mishandled sexual assault investigations. (Hardy Aff. ¶ "78").

Furthermore, RPI never faced pressure from the State of New York to do more to combat sexual violence on campus. RPI did change their policies after the NY Legislature passed "Enough is Enough" which required all campuses to overhaul their sexual misconduct policy and procedures to comply with the law. (2015 Sess. Law News of N.Y. Ch. 76 (S. 5965) (McKINNEY'S).

To address Plaintiff's allegations regarding "local media criticism," Plaintiff alleges that due to such "media criticism," "RPI crafted an aggressive and discriminatory policies and procedures designed to disregard the due process rights of male students in an attempt to quell the negative public relations and public pressure." (Complaint ¶ 49). Such assertion is flawed for two reasons: (1) RPI's comprehensive Student Sexual Misconduct Policy and Procedures was adopted

14

in 2016 to comply with Enough is Enough with minor updates in 2017 and 2018 which predate the only two articles Plaintiff cites to support his contention, May 4, 2018 and July 26, 2018; (2) RPI <u>never</u> faced similar criticism to that of Columbia University in approximately 2014.

Furthermore, articles "raising awareness of sexual assault, without drawing gendered assumptions about males, does not raise an inference of anti-male bias." <u>Colgate</u>, 2017 LW 4990629, at *12 *citing* <u>Doe v. Coll. Of Wooster</u>, 243 F. Supp.3d 875, 886 (N.D. Ohio 2017) ("distinguishing <u>Columbia</u> and holding no inference of gender bias where public criticism leveled against the university's handling of sexual assault was 'gender neutral'").

Both articles involving RPI are gender-neutral in their respective assertions regarding RPI's Title IX Policy and Procedures. While the May 4, 2018 article states "if you are a woman and are considering RPI, I urge you to consider your options" the op-ed is addressed to "potential students" and further states that "Rensselaer is not alone in its horrendous Title IX process." The isolated use of specific statements from two articles does not satisfy Plaintiff's burden of establishing that RPI altered its policies to intentionally discriminate against males and as such, discriminated against Plaintiff because he is a male, during his sexual misconduct proceeding.

Furthermore, as this Court expressed in *Colgate* when distinguishing that case from *Columbia*, where Columbia "faced <u>significant</u> criticism from the public press", the foregoing motion is not a 12(b)(6) therefore, Plaintiff herein must allege more than "a plausible inference of gender bias" to establish a likelihood of success on the merits. <u>Colgate</u>, 2017 LW 4990629, at *12. He must make a "clear showing" that the two articles cited caused RPI to change its policies that were established prior to the articles in a manner to intentionally discriminate against males. <u>Adams v. Whitney</u>, 2008 WL 189905.

Plaintiff fails to satisfy his burden of establishing that RPI's investigators maintain gender bias against males due to outside pressure thus, his motion for a preliminary injunction must fail.

- ***Student Sexual Misconduct Policy and Student Bill of Rights***

Plaintiff alleges that RPI's Student Sexual Misconduct Policy and Student Bill of Rights are inherently biased against males based on its wording. Plaintiff takes particular exception to the 6th and 8th Right contained in RPI's Student Bill of Rights.

Plaintiff asserts that "[w]hile the Bill of Rights claims to outline the rights 'all students' have at RPI, its language establishes that RPI considers the rights of the Complainant (who are overwhelmingly female students at RPI) to be greater than the Respondent's (who are overwhelmingly male students at RPI). (Complaint ⁋ 69).

First and foremost, N.Y. Educ. § 6443 ("Enough is Enough") mandates "Every institution shall adopt and implement the following "Students' Bill of Rights" as part of its code of conduct . . . 'All students have the right to: . . . 6. Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations; . . . 8. Be protected from retaliation by the institution, any student, the accused and/or the respondent, and/or their friends, family and acquaintances within the jurisdiction of the institution. . .'" The very wording Plaintiff alleges showcases RPI's gender bias is required by New York State law and thus fails to establish any gender bias.

Furthermore, while Plaintiff argues that there is no reciprocal right guaranteeing Respondent's a "presumption of innocence," such is flawed for two reasons: (1) § 6443 of N.Y. Educ. Law does not permit such a reciprocal right as the law specifically states that "[e]very institute ***shall adopt and implement the following*** *"Student Bill of Rights" as part of its code of conduct . . .*"; and (2) § 6444(5)(c)(ii) of N.Y. Educ. Law requires that:

[e]very institution shall ensure that every student be afforded the following rights .
. . [t]hroughout proceedings involving such an accusation of sexual assault . . . or
sexual activity that may otherwise violate the institution's code of conduct, the right
. . . [t]o a presumption that the respondent is 'not responsible' until a finding of
responsibility is made . . .

which, as Plaintiff acknowledges in footnote 8 of the Complaint, RPI's Policy and Procedures

provides for. (RPI Policy, III B(5) on p. 19, III H(9) on p. 22 attached as Ex. "A" to Hardy Aff.).

Therefore, contrary to Plaintiff's assertions, RPI's Sexual Misconduct Policy and

Procedures and the legislatively required verbatim Students' Bill of Rights is not the product of

"community pressure" to favor female Complainants and thus, fails to establish that his

misconduct proceedings were motivated by a gender bias against males.

- *Statistics*

Plaintiff's assertion that students accused of violating RPI's Student Sexual Misconduct

Policy are overwhelmingly male, is baseless as RPI investigates every complaint lodged regardless

of the gender of the individual. (Complaint ¶ 89; Hardy Affidavit ¶ 95).  Additionally, RPI has no

control over the students who come forth with a complaint and what their gender may be.

Plaintiff furthers alleges that due to the aforementioned alleged public pressure, the number

of students held responsible for sexual violence has dramatically increased. (Complaint ¶86). Such

is not true. Between February 1, 2015 and June 16, 2019, RPI has received 228 allegations of a

violation of the Sexual Misconduct Policy.  Of those 228 allegations, 225 cases have been closed

and 37 cases (16.44%) resulted in an informal resolution; 54 (24.00%) resulted in a finding of no

policy violation; 65 (28.89%) resulted in a no policy violation because the Complainant opted to

not participate; and 69 (30.67%) resulted in a finding of a policy violation.  (Hardy Aff. ¶ 87).

There is absolutely no disparate finding that individuals accused of violating RPI's Sexual

Misconduct Policy are overwhelming found to have violated the policy and as such, Plaintiff fails

to establish that RPI's procedures are motivated by any bias.

17

Plaintiff proffers no competent evidence to support any of his contentions regarding gender-bias and as such, Plaintiff cannot satisfy his burden of establishing that any alleged erroneous outcome was motivated by such bias therefore, his motion must be denied.

***Erroneous Outcome—Flawed Procedures: Training and Presumption of Male Guilt***

Plaintiff alleges throughout the Complaint that the Defendants were improperly trained and as such, the proceedings against him were flawed and resulted in an erroneous outcome.

Plaintiff alleges that "some of the named defendants were responsible for developing, executing and administering the training and education to students, faculty and staff and the 'specialized training' to investigators and adjudicators described above." (Complaint ¶67). RPI personnel neither develop nor conduct the training of relevant Title IX individuals. (Hardy Aff. ¶91). All individuals who are involved in any Title IX proceeding have completed the SUNY Student Conduct Institute ("SUNYSCI") Course which is designed to train "staff at public and private institutions of higher education on how to fairly and equitably investigate and adjudicate violations and disclosures. (*See* Hardy Aff. ¶ 91).

SUNYSCI provides in-depth training to student conduct officials, hearing officers, Title IX officials and other college personnel in due process, trauma-informed investigations and adjudications, questioning and weighing of evidence, and other crucial best practices in the investigation and conduct process that comply with relevant case law, Title IX guidance, the Clery Act, and New York Education Law 129-B ['Enough is Enough']." Plaintiff's allegations have no basis in fact and as such, fail to support his claim for an erroneous outcome.

Furthermore, there is no evidence whatsoever to support the notion that SUNYSCI trains Title IX Investigators under a presumption of male guilt and such is not the policy of RPI therefore, Plaintiff's claim must fail.

Additionally, inadequate training is not a bases upon which an erroneous determination claim can be addressed. The only inquiry is whether the decisions were motivated by gender bias; a hurdle Plaintiff fails to overcome.

### *Erroneous Outcome—Flawed Procedures: Collection of Evidence and Jane Roe 2 Investigation*

Plaintiff asserts that an erroneous outcome resulted due to a violation of procedures in the collection of evidence because one witness called the Plaintiff a "weird guy" during his narrative and another witness stated "But I've heard other people say . . . like through other like friends compared other stories of like how [Plaintiff] was kind of weird and they always got a creepy vibe from him." (Complaint ¶¶ 112—13). It's not entirely clear what Plaintiff is trying to allege by picking two statements from the twelve interviews that occurred throughout the investigative portion of the proceedings, but such does not establish that any Title IX investigator was biased themselves. Even so, there is absolutely no connection establishing that any questioning was the product of male gender bias and as such, Plaintiff's claim must fail.

Plaintiff further asserts that Investigator Brown-Goyette undertook the investigation into Jane Roe 2's complaint "to improperly bolster [Jane Roe 1's] allegations and Ms. Brown-Goyette's pre-determined findings."

Such an assertion lacks merit as Title IX regulations and RPI's Policy requires all employees to report any suspected violation of RPI's Sexual Misconduct Policy and as a trained Title IX Investigator, Ms. Brown-Goyette was obligated to inquire into Jane Roe 2's complaint. Not only is an investigation into any complaint of sexual misconduct mandated by law, Plaintiff's claim that there was a "pre-determined finding of guilt" has absolutely no basis in fact as there was no policy violation found with regard to the allegations by Jane Roe 2, thus his claim must fail.

Furthermore, Jane Roe 2 originally filed an anonymous report in February 20, 2018, prior to the foregoing matter, because she wanted an investigation into the matter. As the notice regarding the allegations states, "Please be advised that the Institute is required to consider any additional allegations that come to light during the investigation."

Additionally, when Jane Roe 2 stated that she no longer wished to participate in the investigation, such was relayed to the CMT who determined Title IX required and that it was in the Institute's best interest to proceed with the investigation, not Brown-Goyette thus, Plaintiff fails to proffer any evidence to support such a contention and as such, his claim must fail. (Ex. "T").

### Erroneous Outcome—Flawed Procedures: Redacted Testimony and Anonymous Witness

Plaintiff next alleges that an erroneous outcome resulted because he was denied access to redacted testimony as well as being denied the name of an anonymous witness.

Not only is the CMT permitted by Policy to redact the testimony or names of certain witnesses, the testimony that was redacted was for the benefit of Plaintiff because it was prejudicial since it referred to additional allegations of sexual misconduct and Plaintiff's prior sexual history which is not to be considered by the reviewing board.  (Section I, H(9) p. 10, Policy attached to Hardy Aff. as Ex. "A) The redacted transcripts reviewed by Plaintiff are the transcripts provided to the Hearing Board as part of the Investigative Record and is no way an attempt to "hide evidence" from Plaintiff and taint his right to a fair hearing.

Therefore, any claim of flawed procedure must fail because such information had no bearing on the ultimate determination and does not evince a flawed procedure due to gender bias.

### Erroneous Outcome—Flawed Procedures: Lack of an Impartial Tribunal

Plaintiff takes particular exception to Defendant Brown-Goyette's involvement in the original investigation even though a second investigator, who is not a defendant in this matter, was

20

a male. Nonetheless, "[t]here is a presumption 'that administrators are honest and impartial, and therefore capable of judging a particular controversy fairly on the basis of its circumstances. The presumption is a rebuttable one, but the burden of rebuttal is heavy indeed: To carry that burden, the party claiming bias must lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable." Patrick v. Success Academy Charter Schools, Inc., 354 F. Supp.3d 185, 204 (EDNY 2018) *quoting* Hess v. Bd. Of Trs., 839 F.3d 668, 675 (7th Cir. 2016). "'Actual bias could be personal animosity, illegal prejudice, or a personal or financial stake in the outcome.'" Patrick, 354 F. Supp.3d at 204.

Importantly, Defendant Brown-Goyette never made a determination on whether Plaintiff violated the Policy during any portion of the investigation.  Further, Plaintiff fails to allege any cognizable facts to overcome the presumption that the investigative Hearing Board, who made the ultimate finding of a policy violation, was not impartial. Patrick, 354 F. Supp.3d at 204.

With regards to Plaintiff's erroneous outcome claims, this Court should hold similarly to *Colgate*, in that "[a]t most, Plaintiff details a list of perceived procedural flaws and tacks on a conclusory allegation that the procedural flaws were motivated by gender bias" where "these alleged procedural flaws are a combination of unsubstantiated assertions based on Plaintiff's subjective impressions at the hearing. . ." as such, his request for a preliminary injunction must be denied. Colgate, 2017 LW 4990629, at 17.

### ii.    *Selective Enforcement*

In the second category of recognized Title IX claims, selective enforcement "[s]uch a claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." Yusef, 35 F.3d at 715.

"To support a claim of selective enforcement, a male plaintiff must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." <u>Yu</u>, 97 F. Supp.3d at 480 (internal quotations and citations omitted). "The male plaintiff must show that 'the University's actions against [the male plaintiff] were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings.'" <u>Yu</u>, 97 F. Supp.3d at 480 *quoting* <u>Doe v. University of the South</u>, (ED Tenn 2009).

Plaintiff does not allege any relevant facts to support his contention that "the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." <u>Yusef</u>, 35 F.3d at 715. Additionally, Plaintiff conflates the matter at hand. Plaintiff alleges "[i]n failing to act on Plaintiff's [retaliation] complaint, but by actively pursuing claims against him, Defendants selectively enforces its Policies and Procedures and Student Bill of Rights because he is a male student." (Complaint ¶ 277). However, Plaintiff fails to support such with any competent evidence of similarly situated females who were treated more favorably than Plaintiff.

Furthermore, and of grave importance, such averments have no bearing on Plaintiff's application for an injunction regarding the finding of a policy violation based upon allegations of sexual assault.

### b. *Breach of Contract*

"When a disciplinary dispute arises between a student and an institution, judicial review is limited to whether the institution acted arbitrarily or whether it substantially complied with its own rules and regulations. <u>Routh v. Univ. of Rochester</u>, 981 F Supp. 2d 184, 208 (WDNY 2013).

When reviewing private university matters "[j]udicial scrutiny of the determination of disciplinary matters … is limited to determining whether the university substantially adhered to its own published rules and guidelines for disciplinary proceedings …." <u>Rensselaer Soc'y of Eng'rs</u>, 689 NYS 2d at 295.

Each of the policy provisions that Plaintiff's attorney alleges in his affidavit (Isman Aff. ¶¶ 39(a)—(d) & 40) were breached are the same provisions Plaintiff alleges resulted in an erroneous outcome and are additionally addressed in Mr. Hardy's Affidavit ¶¶102—117. As discussed *surpra*, RPI has not breached any provision of its policy.

Plaintiff further alleges that RPI has breached its anti-retaliation provision of its policy. RPI's Student Sexual Misconduct Policy provides, "*whenever possible*, Rensselaer seeks to complete the investigation of complaints within approximately 60 days from receipt of the initial report . . . all times frames expressed in the Complaint procedures outlined in this Policy are meant as guidelines rather than rigid requirements." Furthermore, "circumstances may arise that require the extension of time frames including extensions beyond such sixty (60) days." (Sect. III B (3), p. 18, Ex. "A" to Hardy Aff.).

During the investigation, on January 9, 2019, Plaintiff went on a leave of absence. Furthermore, Plaintiff's complaint stated: "it has come to my attention, through my own observations and statements made to me by my friends and acquaintances, that students are now treating me differently, and indeed gossip about me, in a manner relating to these investigations. I do not know the source of this gossip except I can say that I am not the source . . . I have learned that among certain groups of students, whom I know to be associated with Jane Roe 1 and/or Jane Roe 2, the allegations against me appear to have become regular conversation." When Plaintiff was interviewed on November 30, 2018, he stated he received glares and was unable to name any student who has made contact or threatened him.  (Hardy Aff. ¶ 114).

While RPI's Policy strives to resolve matters within 60 days, Plaintiff's absence from the Institute hindered the investigation and further, his inability to name students who threatened him, limited the Institute's ability to render an effective resolution. Nonetheless, such does not rise to

the level of a breach of contract as RPI has investigated the matter and is set to render an ultimate determination in the near future. (Hardy Aff. ¶116).

Therefore, Plaintiff fails to establish a likelihood of success on his breach of contract claim and as such, his motion for a preliminary injunction must be denied.

Furthermore, Defendants complied with its policies and respectfully direct the Court to the Affidavit of Mr. Hardy to establish such. (*See* Hardy Aff.).

### 2. *Irreparable Harm and Balancing of the Equities*

The Second Circuit has held that "[t]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve." Grand River Enter. Six Nations, 481 F.3d 60,66 (2d Cir. 2007).

Due to a finding of a policy violation, Plaintiff was suspended until December 31, 2019. However, during the investigations, Plaintiff decided to take a leave of absence with no projected return date therefore, the "status quo" is based upon when Plaintiff took his leave of absence, which is the current state of the matter. (Leave of Absence form attached to Hardy Aff. as Ex. "Y"). Plaintiff makes no reference as to when he would seek to return to the Institute and since the fall 2019 semester commences in August 2019, it appears Plaintiff will still be on his Leave of Absence until the Spring 2020 semester which commences in January 2020. Since his suspension will be lifted for the Spring 2020 semester, an injunction will have no bearing on such.

Therefore, Plaintiff will not suffer irreparable harm and the hardships do not favor Plaintiff and his application for a preliminary injunction should be denied.

### 3. *Public Interest*

"The public interest prong simply means that if injunctive relief is granted, a court should ensure that the injunctive provisions of the order do not harm the public interest." Doe #1 v.

<u>Syracuse University</u>, 2018 WL 3193199, *6 (NDNY 2018) *quoting* <u>Main St. Baseball v.</u>
<u>Binghamton Mets Baseball Club</u>, 103 F. Supp.3d 244 (NDNY 2015).

Similar to the holding in <u>Doe #1</u>, requiring RPI to remove any notations from his transcript
"would harm the public interest in ensuring that any institution to which Plaintiff[] submits a
transfer application has a complete picture of Plaintiff['s] experience while [he was] enrolled as
[a] student[] at Defendant University." <u>Doe #1</u>, 2018 WL 3193199 at *6.  "The public interest
would not be served if the Court required Defendants to provide Plaintiff[] with transcripts that
were not completely accurate. <u>Id.</u>

Furthermore, Plaintiff was found to have violated the Student Sexual Misconduct Policy
by two independent investigative bodies at RPI and has failed to establish be a clear showing that
such was erroneous thus, an injunction requiring his admittance during the pendency of this
proceeding is not in the public interest.

## CONCLUSION

As a result of the aforementioned it is evident that plaintiff has failed to meet his burden
for the issuance of a preliminary injunction.

Defendants respectfully request an Order of this Court denying plaintiff's motion for
injunctive relief, together with costs, disbursements and such other and further relief as this Court
deems just and proper.

Dated:  July 8 2019                PATTISON, SAMPSON, GINSBERG & GRIFFIN, PLLC

                         By:       _____
                                   Michael E. Ginsberg, Esq.
                                   Rhiannon I. Spencer, Esq.
                                   *Attorney for Defendants*
                                   22 First Street, P.O. Box 208
                                   Troy, New York 12180
                                   Telephone: (518) 266-1000