UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN DOE,

            Plaintiff,

-against-

RENSSELAER POLYTECHNIC INSTITUTE ("RPI"), ELIZABETH BROWN-GOYETTE, Title IX Investigator; LARRY HARDY, Title IX Coordinator; TRAVIS APGAR, Assistant Vice President and Dean of Students; LENORMAN STRONG, Special Assistant to the President; and PETER KONWERSKI, Vice President for Student Life at RPI,

            Defendants.

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO TRO AND PRELIMINARY INJUNCTION**

Case No.: 1:19-cv-00719-BKS-DJS

## REPLY BRIEF

### I. Introduction

  Defendants have no answer for why reported allegations of sexual assault at RPI have increased nearly 400% in the three years preceding the allegations at issue in this case. Defendants also have no answer for why 81% of the allegations in the year preceding the allegations at issue here were brought against men and only 8% were brought against women. Just as significantly, RPI offers no data, evidence or explanation to rebut Plaintiff's claim that an ever-increasing number of men have been found responsible of sexual assault over that time. The Defendants simply provide aggregated data from February 2015 to June 2019 showing how allegations were resolved. But this data is not probative of whether its Title IX process is gender biased. In sum, Defendants only offer

this shoulder-shrugging response: "RPI has no control over the students who come forth with a complaint and what their gender may be." Def. Memo of Law at 17.

But Plaintiff has demonstrated that Defendants do have significant control over what students come forward, how those cases are investigated and adjudicated, and why vastly more men are being accused of and found responsible for sexual misconduct. Granted, disproportionate results alone are not enough to establish that gender played a motivating factor in the disciplinary decision against Plaintiff. *Doe v. Columbia University*, 101 F. Supp. 3d 356, 367 (S.D.N.Y 2015). Additionally, Plaintiff connected the dots by establishing that this discrimination was intentional and a substantial and motivating factor for the Defendants' decision regarding Plaintiff. *Doe v. Columbia University*, 831 F.3d 46, 54 (2d. Cir 2016). Since RPI offers no evidence except to deny gender bias generally and against Plaintiff specifically, and cannot credibly respond to Plaintiff's evidence and claims, Plaintiff has satisfied his burden to obtain the temporary relief sought.

Interestingly, the materials provided by the Defendants in opposition to this application reveal more about how Defendants' gender discrimination manifested itself against Plaintiff. In particular, Defendants' Response reveals how RPI selectively enforced its policies, how its gender bias resulted in its erroneous determination and how it has breached its contract with Plaintiff.

**II.    Selective Enforcement**

RPI's discrimination against Plaintiff is evident by reviewing the materials associated with Plaintiff's retaliation claim and comparing RPI's investigation of Jane Roe 1's allegations to RPI's investigation of Plaintiff's retaliation claim.

To begin, Defendants' failure to investigate Plaintiff's retaliation claim and claim that the Complainants (Jane Roes 1 and 2) were meddling with the fairness of the investigations into their

allegations, is a clear example of selective enforcement caused by gender discrimination. Defendants offer no answer for why it took two weeks and two requests for Defendants to act in response to Plaintiff's legitimate retaliation claims which were first raised in November 2018. Defendants also offer no real reason why at the commencement of this action, more than 200 hundred days after Plaintiff made his formal complaint, Defendants had not completed its investigation or notified Plaintiff why the investigation took longer than the 60-day goal outlined in RPI's Sexual Misconduct Polices and Procedures. Defendants' excuses for why they had not completed their investigation in a timely fashion were to blame the Plaintiff for taking a medical leave of absence[1] and that Plaintiff's failure to name relevant witnesses impeded the investigation. *See* Def. Memo of Law at 23. But neither of these excuses are credible.

While this "blame the male student" technique is more evidence of Defendants' discriminatory intent, Defendants do not even try to offer any evidence that the investigation was frustrated by Plaintiff's medical leave or his failure to identify relevant witnesses because they cannot. Indeed, Defendants' own submissions show that Plaintiff promptly responded to every request from Defendants regarding all matters; that Plaintiff participated in his interview with Mr. Hardy on November 30, 2018 (s*ee* Exhibit "FF" to Hardy Aff.*)* and named **seven** different students directly involved in the retaliation/interference with the underlying investigations or who had other relevant information (s*ee* Exhibit "V" to Hardy Aff.); that on February 7th, 69 days after Plaintiff's interview with Mr. Hardy about the retaliation claim, Plaintiff requested an update on the investigation. *See* Ex. "AA" to Hardy Aff. Mr. Hardy even replied on February 9th that "[t]he investigation is ongoing and will be completed in the near future." *Id.* Mr. Hardy never asked for

---

[1] Plaintiff took the leave because of the stress and anxiety caused by the very retaliation Defendants failed to investigate or act to mitigate as promised (*See* Exhibit Y to Hardy Aff.; Ex. "FF" at 12-13 where Mr. Hardy said he would speak to the Complainants and remind them about the import of the mutual No Contact Orders)

additional information, never indicated there would be a delay, or that a delay was possible because Plaintiff identified only **seven** relevant students or because of Plaintiff's medical leave. In short, Defendants' excuses for its failure to investigative and adjudicate Plaintiff's retaliation claim are not credible.

Although Defendants' justification for failing to investigate and adjudicate is not credible, there are several non-exclusive gender-biased reasons why Defendants failed to investigate that are credible based on the evidence presented. One possibility is that the Defendants do not take the complaints of male students seriously and treat male students, like Plaintiff, differently. Another is that by actually investigating the retaliation claim, Defendants would have to notify female students that they were accused of misconduct. Defendants did not want to put themselves in the position of accusing female students of misconduct since this is antithetical to their biased education, training and procedures and the presumption that the female complainants. Additionally, an investigation may have revealed that the female students were involved in retaliation and/or meddling with the ongoing investigations as alleged, and that would hurt the female students' credibility going forward. Any of these reasons make more sense than Defendants' attempt to blame Plaintiff for its failure to investigate.

And now there is more evidence of selective enforcement and further support for the gender-motivated explanations of Defendants' selective action. While this application was pending before the Court, Mr. Hardy managed to conclude his investigation into Plaintiff's retaliation claim, completing his Investigation Report on June 28, 2019, ten days after this action was commenced. *See* Iseman Dec. in support of Reply at paragraph 19(c). On July 5, 2019, Plaintiff was notified by Jacquelyn Turner, RPI's Title IX Coordinator, that the Case Management Team ("CMT") concluded there was no policy violation based on Mr. Hardy's investigation. Plaintiff promptly

requested to review the Investigation Report and associated materials and challenged the determination by requesting a fact-finding hearing. *See Id.* At paragraphs 5 and 6.

On July 11, 2019, Plaintiff had his first opportunity to review Mr. Hardy's Investigation Report. There are two critical points for the Court to consider that are relevant to Plaintiff's request for preliminary relief: First, nowhere in the Investigation Report or in the CMT's determination letter, does it cite that the investigation was delayed or impeded by Plaintiff's medical leave of absence. Relatedly, there is no evidence Mr. Hardy took any additional investigatory steps after he interviewed Plaintiff on November 30, 2019 until he completed his report on June 28th. *See generally Exhibit "D" to Iseman Declaration in Support of Reply.* Although Plaintiff named seven relevant students, none were interviewed and there is no evidence Mr. Hardy attempted to interview them. These facts clearly contradict Defendants' excuses for the delay.

Second, nowhere in the Investigation Report is there evidence that RPI notified Jane Roes 1 and 2 who Plaintiff alleged were retaliating against him and interfering with the underlying investigations. Such notice is required by RPI's Policies and Procedures (*See* Ex. A to Defendants Memo of Law at III(I), at pg. 23). In addition, Jane Roes 1 and 2 were not even interviewed and nor were the multiple other students Plaintiff named who may have knowledge about the retaliation. This is despite the assurances Mr. Hardy made to Plaintiff on November 30, 2018 that he would speak with "individuals you have named" and the "two complainants" and when he interviewed the two complainants he would "reiterate" the extent of the no-contact order. *See* Ex. "FF" to Hardy Aff. at 12-13. These facts show that the Defendants never had any intention of investigating Plaintiff's retaliation claim.

Moreover, while irrelevant allegations of other misconduct by Plaintiff, mostly based on hearsay and rumor, were improperly included in Ms. Brown-Goyette's Investigation Report to the

Case Management Team (*see* Exhibit X at 1 to Hardy Aff.), information regarding Plaintiff's allegations of meddling and retaliation – which were relevant to the Ms. Brown-Goyette's Investigation – were not included. How is this nothing but a biased and selective presentation of the relevant information?

After considering the above, we ask the Court to compare the steps Defendants took in response to Plaintiff's retaliation claim and Jane Roe 1's claim for additional evidence of selective enforcement and gender discrimination. While not a single named witness was interviewed by Mr. Hardy regarding Plaintiff's claim, eleven interviews were conducted in furtherance of Jane Roe 1's claim and eight of the eleven consisted of witnesses ostensibly supporting Jane Roe 1's narrative. *See* Ex. "X" to Hardy Aff. At 1. And among those eight interviews, the vast majority of the information obtained was the reiteration of what Jane Roe 1 reported to others, their subjective impressions of her demeanor and their knowledge of allegations of Plaintiff's other bad acts, but no relevant information about the actual conduct alleged. After all not a single person besides Jane Roe 1 and Plaintiff actually witnessed any of the alleged misconduct.

Additionally, Ms. Brown-Goyette's Investigation Report of Jane Roe 1's allegation ran 27 single-spaced pages and obviously took considerable effort. Comparatively, Mr. Hardy's Investigation Report was 4.5 pages, and while it took considerable time, there is no sign he made any investigatory effort after interviewing Plaintiff. More troubling, the CMT accepted Mr. Hardy's report without sending him back to actually do an investigation despite the fact that RPI's Policies place this gatekeeper duty on the CMT.[2] *See* Ex. "C" to Iseman Dec. in support of Reply. But that is

---

[2] "Upon completion of the investigation, the Investigator will prepare a preliminary report outlining the investigation and the facts and circumstances that were found during the course of the investigation. The Investigator will review the preliminary report and factual findings with the Case Management Team. **Based on this review, the Case Management Team will determine whether the preliminary report is reasonably complete, whether the**

the expected result when the half the CMT making this determination consists of Defendants Elizabeth Brown-Goyette and Travis Apgar. Indeed, how were they not obliged to recuse themselves given the circumstances to ensure Plaintiff obtained an impartial determination?

The disparity in the handling of these investigations shows the Defendants going out of their way to pursue irrelevant, redundant and prejudicial information against Plaintiff, and making zero effort to investigate Plaintiff's legitimate complaints against his accusers. By doing so, Defendants' are, in effect, advocating for Jane Roe 1 while actively undermining Plaintiff's attempt to seek redress. Under these circumstances there can be no more clear evidence of Defendants' selective enforcement.

And this brings us back to Defendants' opening defense: that they cannot control who comes forward with complaints of sexual misconduct. But these facts show otherwise. The Defendants directly and indirectly can control the number of reports and their outcomes. That control in demonstrated by Ms. Brown Goyette hunting down allegations against Plaintiff based on group-chat gossip that led to a new investigation despite the student's wishes and the specter of two more other allegations. That control is demonstrated by Ms. Brown-Goyette marshalling irrelevant and prejudicial material in an effort to influence the adjudication process. That control is demonstrated by Defendants' failing to even try to make it look like they cared about Plaintiff's retaliation claim for all the reasons outlined above. Why would a male student come forward with a complaint about sexual misconduct or even try to defend himself against a claim if he knows this is how RPI will treat him?

## III. Erroneous Outcome

---

**preliminary report complies with the terms of this policy or whether further review or investigation is appropriate**." Ex. "A" at 25 of Hardy Aff. (emphasis supplied).

Defendants' opposition papers and the information recently obtained regarding Defendants' failure to investigate the retaliation claim further bolsters Plaintiff's erroneous outcome cause of action because a critical part of his retaliation claim was that the Complainants were influencing the ongoing investigations. Specifically, Plaintiff advised Mr. Hardy on November 18, 2018 that

> Even though I know I have done nothing wrong and I have cooperated fully with the investigations and have remained respectfully discrete about the allegations and my proof contradicting the allegations, I am concerned that [Jane Roe 1, Jane Roe 2] and her friends (who no doubt believe their unchallenged version of events) are actively undermining my opportunity for a fair investigation, a fair chance at clearing my name and my right to enjoy this campus just as much as them. Similarly, if any of these students are witnesses in the investigation, I fear their objectivity and, therefore, the impartiality of the investigations may be impacted to my detriment.

*See* Ex. "V" to Hardy Aff. These fears were not conjecture or paranoia. At least one witness interviewed (Witness 8/A) indicated that her social group of friends were actively coordinating and speaking about the pending investigation. *See* Ex "O" to Hardy Aff. at 7: 7-11 and 11: 15-25.

It should also be noted that it is against RPI's Policies and Procedures and New York State Education Law § 6444(5)(c)(vi) for fact-finders and adjudicators to use the past sexual history of an accused student against that student at any point in the investigation and adjudication process. Why then did Ms. Brown-Goyette include clearly irrelevant and improper information in her Investigation Report but try to shield it with "look but don't look" footnote? (*See* Ex. "X" at 20, FN. 6 to Hardy Aff.). But that is not all. Ms. Brown-Goyette went on the characterize the testimony as relevant when it clearly was not, stating, "Witness A provided the names of three other students she believed had experiences or information that could be relevant to the instant investigation, including Jane Roe 2." *Id*. at 21. The only thing these "witnesses" could offer according to the rumors Witness A had heard, was that these other students had negative experiences with Plaintiff that were entirely unrelated to the allegation Ms. Brown-Goyette was investigating. This is clearly demonstrated by Jane Roe 2's interview (the only one of three suggested by Witness A who spoke

with Ms. Brown-Goyette) where Ms. Brown-Goyette failed to ask a single pertinent question about anything to do with Jane Roe 1's allegation and inquired exclusively into unrelated past sexual conduct. (*See* Exhibit Q to Hardy Aff.).

While RPI may have an interest in investigating all claims of sexual misconduct, no matter how attenuated the reporting, that information cannot be included as part of a separate investigation. But it was here and the CMT admittedly considered this information (*see* Exhibit "Z "to Hardy Aff.) since it "reviewed the Investigation Report" but did not state that it did not consider the irrelevant prejudicial information about Plaintiff's alleged past sexual history. Not only did the inclusion of this information clearly violate RPI's Polices and New York State Law, it also demonstrates the significantly flawed investigatory and adjudicatory procedures RPI used that led to its erroneous and biased determination against Plaintiff.

## IV. Plaintiff is Entitled to the Preliminary Relief Sought

In addition to increasing the factual merits for each of Plaintiff's claims, Defendants' opposition also does not undermine the legal basis for the relief sought. To begin Defendants wrongly suggests that if the Court granted the requested relief that Plaintiff would effectively receive all the relief sought when he commenced this action and cites *Eng v. Smith*, 849 F.2d 80, 83 (2d Cir. 1988) for the notion that the Court therefor apply the "substantial likelihood of success standard." Def. Memo of Law at 9. But that is not the case. Plaintiff seeks to temporarily bar RPI from imposing the sanctions, not permanently do so. If RPI somehow prevails in this action, it would then be entitled to suspend Plaintiff, place a notation on his transcript and bar him from campus. A temporary restraint is just that and does not deprive RPI of any future option. Nor does it award Plaintiff the damages he seeks. In fact, contrary to Defendants' suggestion, the Second Circuit in *Eng*, did not apply the "substantial likelihood of success" standard. Rather, it applied the

lower "likelihood of success standard" and upheld the preliminary injunction because it "merely protects the rights of the plaintiff class until a final determination on the merits is reached." *Eng*, 849 F.2d at 82. We ask for the same temporary protections here.

While the Court has considerable discretion to choose what standard to apply, whether it be the "fair grounds for litigation", the "likelihood of success" or the "substantial likelihood of success" standards, Plaintiff is entitled to the relief sought because Defendants have no defense to its failure to investigate Plaintiff's retaliation claim, no defense to the related breach of contract claims and have no defense to the flawed procedures it has subjected Plaintiff to in each of these proceedings. As a consequence, Plaintiff, casts articulable doubt on the accuracy of the outcome of these disciplinary proceedings and the Court should grant the requested temporary relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the relief requested herein and such further and additional relief as it deems just and proper.

Dated: July 15, 2019                    O'CONNELL AND ARONOWITZ

By: *[signature]*
_____
Scott W. Iseman, Esq.
Bar Roll #: 518859
Attorneys for Plaintiff
Office and P.O. Address
54 State Street
Albany NY  12207-2501
(518) 462-5601