**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHN DOE,

                              Plaintiff,

                                                    1:19-CV-719
            v.                                      (DJS)[1]

RENSSELAER POLYTECHNIC INSTITUTE, *et al.*,

                              Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

O'CONNELL AND ARONOWITZ          SCOTT W. ISEMAN, ESQ.
Counsel for Plaintiff
54 State Street
9th Floor
Albany, New York 12207

PATTISON, SAMPSON, GINSBERG      MICHAEL GINSBERG, ESQ.
& GRIFFIN, PLLC                  RHIANNON SPENCER, ESQ.
Counsel for Defendants
22 First Street
P.O. Box 208
Troy, New York 12181

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

        Plaintiff has filed an action alleging violations of Title IX and breach of contract

by Rensselaer Polytechnic Institute ("RPI") and certain of its employees.  Dkt. No. 1,

Compl.  Presently before the Court is Plaintiff's Motion to Proceed under the Pseudonym

---

[1] The parties have consented to proceed before the undersigned for all further proceedings in this matter.  Dkt. No. 18.

"John Doe."  Dkt. No. 4, pp. 1-2.  Plaintiff has also filed a Motion for a Preliminary Injunction, Dkt. Nos. 4 & 5, seeking to enjoin Defendants from imposing sanctions on him.[2]  Dkt. No. 5, Pl.'s Mem. of Law.  Plaintiff contends that he will be irreparably injured if he is not permitted to attend the fall semester at RPI, and if a disciplinary notation remains on his transcript.  *Id.*  He contends that there are sufficiently serious questions going to the merits of his claims to make them fair ground for litigation.  *Id.*  Defendants have opposed the Motion for a Preliminary Injunction, but not Plaintiff's request to proceed anonymously.  Dkt. No. 11.  Plaintiff has submitted a reply in further support of his Motion.  Dkt. No. 19.

Defendants, for their part, have moved to dismiss Plaintiff's claims against the individual Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 15. Plaintiff has opposed this Motion to Dismiss, Dkt. No. 21, and Defendants have submitted a reply, Dkt. No. 22.

The Court held a hearing on August 8, 2019, at which both parties were present and had a full opportunity to be heard.  Aug. 8, 2019 Text Min. Entry.  Finally, the Court directed that Defendants file a further Affidavit from Defendant Hardy to correct certain statements made in his original Affidavit, and to supply the Court with the documentation relied upon by RPI's Case Management Team and its Hearing Board.  Dkt. No. 24, Text Order dated Aug. 14, 2019.  Defendants complied with that directive, Dkt. No. 25, and Plaintiff's counsel has submitted a further response.  Dkt. No. 26.

---

[2]  A request regarding Plaintiff's retaliation claim, *see* Dkt. No. 4 at p. 2, has been rendered moot by RPI's completion of that investigation.

For the reasons that follow, Plaintiff's Motion to proceed as "John Doe" is GRANTED, his Motion for a Preliminary Injunction is DENIED, and Defendants' partial Motion to Dismiss is GRANTED.

## I. PLAINTIFF'S REQUEST TO PROCEED UNDER A PSEUDONYM

Plaintiff has moved to proceed anonymously in this case.  Pl.'s Mem. of Law at pp. 8-9.  Defendants indicated at the hearing that they do not object.

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties."  FED. R. CIV. P. 10(a).  "A party seeking to proceed under pseudonym bears a heavy burden, and will only be allowed to do so if private interests outweigh the countervailing public interest in full disclosure."  *Doe v. Colgate Univ.*, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016).  The Second Circuit has provided a non-exhaustive list of factors to consider in balancing a plaintiff's interest in anonymity against the public interest in disclosure and any prejudice to defendants. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-190 (2d Cir. 2008).  Those factors are as follow:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether

the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal quotation marks and citations omitted). Application of these factors to the particular facts of a case "is left to the sound discretion of the district court." *N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, 2012 WL 5899331, at *4 (S.D.N.Y. Nov. 26, 2012) (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d at 190). Here, Plaintiff particularly emphasizes the first and second factors as favoring his request to proceed anonymously. Pl.'s Mem. of Law at p. 9. Consideration of the relevant factors supports granting Plaintiff's application.

As to the first factor, the lawsuit will necessarily detail sexual encounters. As indicated by Judge Peebles in a recent Report and Recommendation, "[c]ourts are divided [ ] over whether allegations of sexual assault or misconduct [ ] involve highly sensitive and personal matters." *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *4 (N.D.N.Y. Sept. 10, 2018); *but see Doe v. Colgate Univ.*, 2016 WL 1448829, at *3 (collecting cases finding the issues to be highly sensitive and personal). This case will likely require a detailed discussion of the investigation into details regarding multiple sexual encounters involving Plaintiff. The Court finds that this factor, though not determinative, weighs in favor of granting Plaintiff's request.

Second, Plaintiff alleges that he has already been the subject of retaliation as a result of the alleged sexual assault; indeed, such retaliation is the subject of a significant

portion of his Complaint.  *See* Compl.  Plaintiff argues that if his name is released, he may be subjected to further retaliation.  This factor weighs in favor of granting Plaintiff's request.

As to the third factor, there is a risk of additional harm that weighs in Plaintiff's favor.  Indeed, it was noted at oral argument that the present lawsuit has been the subject of multiple newspaper articles.  Judge Kahn recently analyzed this issue at length, describing that "[r]ecently, cases stemming from investigations of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their accusers."  *Doe v. Colgate Univ.*, 2016 WL 1448829, at *2.  There, Judge Kahn determined that "protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected."  *Id.*  Judge Kahn also found the argument persuasive that "disclosure of [the plaintiff's] identity would result in significant harm to him and would undermine his purpose in bringing this action, which is to seek redress for reputational harm he alleges he incurred as a result of Defendants' actions."  *Id.*  He continued,

> [s]hould Plaintiff prevail in proving that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges. Moreover, revealing Plaintiff's identity at this stage risks undermining the fairness and impartiality of the proceedings. The rise of sexual assaults on college campuses is a troubling epidemic, however, in addressing this epidemic, courts have a duty to ensure that "[e]ach case must be decided on its own merits, according to its own facts. If a college student is to be marked for life as a sexual predator, it is reasonable to require that he be provided a fair opportunity to defend himself and an impartial arbiter to make that

decision." *John Doe v. Brandeis Univ.*, No. 15-11557, 2016 WL 1274533, at *6 (D. Mass. Mar. 31, 2016). The Court finds that forcing Plaintiff to reveal his identity would not advance any aspect of the litigation but instead poses a risk that Plaintiff would be subject to unnecessary ridicule and attention. The Court is also mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations."

*Id.* at *3.

As for the fourth factor, Plaintiff is not a minor "who has had no say in deciding whether or not to proceed with this litigation. Even though [he is] still in [his] formative years, plaintiff [is an] adult college student[] who availed [himself] to the courts by filing this suit." *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *6. As such, this factor does not weigh in favor of Plaintiff's anonymity. The fifth factor also does not favor Plaintiff. "When a lawsuit challenges governmental actions, actors, or policies, the plaintiff has a strong interest in proceeding anonymously." *Id.* (citing *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) and *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)). This action between private parties does not bring about the considerations that would be applicable in a suit against government entities.

Moving to the sixth factor, Defendants consent to Plaintiff proceeding under a pseudonym, and the Court does not identify any particular prejudice that would inure to Defendants should Plaintiff be permitted to proceed anonymously. Defendants know Plaintiff's identity, and so their ability to conduct discovery will not be impeded, and they will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff's identity publicly. *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *7-8 (citing

*Doe v. Colgate Univ.*, 2016 WL 1448829, at *3 and *Doe No. 2 v. Kolko,* 242 F.R.D. at 198).

As to the maintenance of confidentiality, Plaintiff's anonymity has been maintained thus far.  As such, Plaintiff's request is not undercut by his identity already having been publicly disclosed.  The eighth and ninth factors deal with the public's interest in disclosure.  These factors weigh against allowing Plaintiff to proceed anonymously.  The public's interest in the litigation is significant:  there has been widespread public interest in issue of campus sexual assault, and "the public has a legitimate interest in knowing the facts involved in [lawsuits].  Among those facts is the identity of the parties."  *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (internal quotation marks omitted) (citations omitted).  In addition, this lawsuit deals with questions of "university culture, issues that extend beyond matters that are of a purely legal nature," weighing in favor of public identification.  *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *9.

Finally, as to the tenth factor, the Court sees no alternative manner of protecting Plaintiff's identity.  *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *9; *Doe v. Univ. of Connecticut*, 2013 WL 4504299, at *28 (D. Conn. Aug. 22, 2013).

The Court determines that, while the public has a strong interest in having access to Plaintiff's identity, the concerns particularly regarding the sensitive nature of the lawsuit and the risk of subjecting Plaintiff to retaliation, which he already believes he is being subjected to, outweigh the public's interest.  The Court therefore exercises its

discretion and permits Plaintiff to proceed in this action under the pseudonym "John Doe."

## II. PRELIMINARY INJUNCTION

### A. Plaintiff's Allegations

The Complaint alleges that at the times relevant to the case Plaintiff was a male, sophomore student at RPI, a college which accepts federal financial assistance and is therefore bound to follow the requirements of Title IX.  Compl. at ¶¶ 17 & 22.  He alleges that RPI violated Title IX, as well as its contractual obligations to him, by conducting an investigation into allegations of sexual misconduct that was biased against men, fundamentally flawed, and had a predetermined and erroneous outcome.   Compl., *generally*.

On October 1, 2018, Plaintiff received notification that a female student ("Jane Roe #1") had alleged that Plaintiff violated RPI's Student Sexual Misconduct Policy.  *Id.* at ¶¶ 93, 97, & 103.  Pursuant to RPI's written policies, the accusation was assigned to a Case Management Team ("CMT"), which then assigned Title IX Investigator Elizabeth Brown-Goyette and Public Safety Officer Matthew Lewis ("the Investigative Team") to investigate the allegations.  *Id.* at ¶ 106; Dkt. No. 11-2, Hardy Aff., Ex. A, RPI Student Sexual Misconduct Policy and Procedures, p. 24.  The CMT consisted of Defendants Apgar and Hardy, Stanley Dunn, and Jacquelyn Turner.  Dkt. No. 11-1, Hardy Aff., ¶ 9. The Investigative Team conducted an investigation, and then provided a Summary of the Evidence for the investigation to the CMT, and the CMT determined it was more likely than not that Plaintiff violated the Student Sexual Misconduct Policy.  Hardy Aff. at ¶¶

- 8 -

40-42; RPI Student Sexual Misconduct Policy and Procedures at p. 25.  Plaintiff objected to the findings and requested an appeal to the Hearing Board, which consisted of Defendant Strong, Tracey Leibach, and Jacqueline Stampalia.  Hardy Aff. at ¶¶ 43-44; RPI Student Sexual Misconduct Policy and Procedures at pp. 26-28.  A hearing was held, and the Hearing Board determined that it was more likely than not that Plaintiff violated the Sexual Misconduct Policy as to one of the three incidents alleged by the Complainant. Hardy Aff. at ¶¶ 55-56.  Plaintiff then requested to appeal the determination, and Defendant Knowerski, V.P. for Student Life, denied Plaintiff's appeal.  Hardy Aff. at ¶¶ 63-65; RPI Student Sexual Misconduct Policy and Procedures at pp. 29-30.

In his Complaint, Plaintiff alleges a laundry list of procedural errors and misconduct by RPI and its representatives in connection with the investigation of the female student's allegation and RPI's ultimate determination regarding the matter.  *See generally* Compl.  In particular, Plaintiff alleges that in the course of the investigation, RPI's Investigative Team interviewed irrelevant witnesses and obtained inflammatory, unsupported and prejudicial information, *id.* at ¶ 111; interviewed Plaintiff and did not permit him to review the transcript for months or make a copy of it, *id.* at ¶¶ 132-34; and declined to interview Plaintiff's sister as a witness, prejudicing Plaintiff, as her testimony would have supported Plaintiff's narrative.  *Id.* at ¶¶ 152-56.  Plaintiff alleges that the Investigative Team's Investigatory Report, submitted first to the Case Management Team and thereafter to the Hearing Board, was biased and sexually discriminatory in its credibility determination.  *Id.* at ¶¶ 157-65.  Plaintiff notes that the Investigative Report cited to two publications regarding sexual assault which he contends are of questionable

validity and constituted expert evidence, but that Plaintiff was not permitted to utilize his own contrary expert testimony before the Hearing Board. *Id.* at ¶¶ 166-73 & 224-35.

On October 31, 2018, Plaintiff was notified that he was accused of a second allegation of sexual misconduct. *Id.* at ¶ 174. Plaintiff alleges that this allegation was made on RPI's own initiative and against the wishes of the female student involved, regarding an incident that had allegedly occurred eight months earlier, and that Defendant Brown-Goyette solicited this information even though she knew that the student had no relevant information regarding the first allegation. *Id.* at ¶¶ 176-84. The Complaint alleges that the Investigative Team then included information regarding this second allegation in the first investigation even though it was irrelevant and prejudicial, and the Case Management Team considered this information in violation of its rule not to consider a student's past sexual history. *Id.* at ¶¶ 185-87. The second investigation resulted in no finding against Plaintiff; Plaintiff alleges this second investigation was brought and carried out in bad faith. *Id.* at ¶¶ 198-99. Plaintiff also objected to Defendant Brown-Goyette acting as an investigator in both investigations, but RPI denied Plaintiff's objections. *Id.* at ¶¶ 191-93.

Finally, Plaintiff alleges that after he was accused by the Complainant, he was subjected to retaliation by other students, who socially ostracized him and ruined his reputation on campus. *Id.* at ¶¶ 200-205. Plaintiff contends that this retaliation was prohibited by RPI's Sexual Assault Policies and Procedures; Plaintiff complained to Defendant Hardy regarding the retaliation and requested RPI's intervention, and RPI only took action weeks later. *Id.* at ¶¶ 206-17. Plaintiff alleges that RPI failed to properly

investigate the retaliation claim; specifically that Defendants did not perform a sufficient investigation, only interviewing Plaintiff regarding his claims, and that the investigation took too long to complete.  *Id.* at ¶¶ 217-20.  Plaintiff contends this is evidence of Defendants' selective enforcement and gender bias.  *Id.* at ¶¶ 221-23.

As noted above, the CMT found it was more likely than not that Plaintiff violated the Student Sexual Misconduct Policy; Plaintiff then objected to the findings and requested an appeal to the Hearing Board.  Hardy Aff. at ¶¶ 42-43.  Plaintiff requested the Hearing Board consider an expert witness, and Defendants denied that request.  Compl. at ¶¶ 224-35.  Plaintiff also was denied information regarding the training the Hearing Board members and investigators received.  *Id.* at ¶ 227.  The Hearing Board determined that Plaintiff committed one of the three acts of sexual misconduct alleged by the Complainant, allegedly relying on Defendants' improper credibility determinations and improper investigation.  *Id.* at ¶¶ 236-42.

Plaintiff's appeal of the determination was denied, and he was suspended until December 31, 2019 and placed on *persona non grata* status, by which Plaintiff is not permitted to return to campus until January 2020; in addition, his transcript has been marked with a finding that he committed sexual misconduct.  *Id.* at ¶¶ 243-47; Dkt. No. 5-2, Iseman Decl., ¶¶ 13-14.  Plaintiff alleges that as a result, he has suffered medical and psychological harm, and that his academic and professional future is at risk because of the notation on his transcript and because of his inability to graduate with his friends and classmates.  Compl. at ¶¶ 248-50.  In fact, Plaintiff took a medical leave from RPI

effective January 2019 as a result of the stress caused by the allegations, the investigation, and the alleged retaliation.  Iseman Decl. at ¶¶ 15-16.

Plaintiff alleges an erroneous outcome violation of Title IX, as a result of RPI's due process, fundamental fairness, and equal protection violations under Title IX through the improper administration, execution, interpretation, and application of its policies and procedures on the basis of Plaintiff's sex, and through the biased training and education of its students, faculty, staff, investigators, and adjudicators.  Compl. at ¶¶ 253-58. Plaintiff specifically alleges that Defendants deprived him of his due process rights by denying him access to redacted testimony and the name of the anonymous witness, and by failing to timely take action on Plaintiff's retaliation claim.  *Id.* at ¶¶ 260-71.  Plaintiff alleges that Defendants selectively enforced its policies and procedures by failing to take appropriate action to resolve Plaintiff's retaliation claim because he is a male.  *Id.* at ¶¶ 274-78.

Plaintiff alleges that RPI breached a contract, its policies and procedures, by failing to enforce its anti-retaliation policy.  *Id.* at ¶¶ 280-85.  Plaintiff also contends that RPI breached its policies by failing to comply with them during the disciplinary hearing process, particularly by failing to assign a neutral investigator, by failing to provide an unbiased hearing, by using Plaintiff's past sexual history and conduct against him, by denying Plaintiff's request to present expert testimony, and by failing to provide Plaintiff access to the complete investigation record by redacting testimony of a witness and keeping a witness anonymous.  *Id.* at ¶¶ 287-90.

Plaintiff is seeking damages and attorney's fees, costs, disbursements and expenses, an injunction directing Defendants to remove all notations of its disciplinary determination from Plaintiff's transcript and student record and to destroy all records relating thereto, and that Defendants be ordered to immediately terminate the suspension sanction and permit Plaintiff to return to RPI as a student in good standing, on track to graduate with his peers. *Id.* at Wherefore Clause.

## B.  Standard for Issuance of a Preliminary Injunction

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks omitted) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The standard for granting a preliminary injunction requires "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sperry Intern. Trade, Inc. v. Gov't of Israel*, 670 F.2d 8, 11 (2d Cir. 1982) (citations omitted).  "Under the first test, the movant may succeed if he shows irreparable harm plus a likelihood of success on the merits. Under the second test, the movant may succeed if he shows irreparable harm, plus sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the movant." *Id.*  "Additionally, the moving party must show that a preliminary injunction is

in the public interest." *Doe v. Middlebury Coll.*, 2015 WL 5488109, at \*2 (D. Vt. Sept. 16, 2015).

Plaintiff argues that the Court should employ the fair ground for litigation standard, while Defendants contend that the Court should employ the substantial likelihood of success standard, because Plaintiff's application for injunctive relief seeks almost all of the relief he ultimately requests.  Pl.'s Mem. of Law at p. 2; Dkt. No. 11, Defs.' Mem. of Law, pp. 8-9 (citing *Eng v. Smith*, 849 F.2d 80, 83 (2d Cir. 1988)).  Because the movant must show that "the balance of hardships tips *decidedly*" in its favor, its overall burden under the "serious questions" standard "is no lighter than the one it bears under the 'likelihood of success' standard." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). As discussed below, Plaintiff cannot meet the requirements for either standard.

## C.  Analysis

### 1.  Irreparable Injury

"To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation marks omitted) (citation omitted).

Plaintiff alleges he will suffer an irreparable injury because "[i]f the suspension stands, he will fall farther behind his classmates and will likely be required to explain the

gap in his schooling and why it took him additional time to complete his degree." Iseman
Decl. at ¶ 20.  Plaintiff contends that he will also have to explain to prospective employers
or graduate schools the disciplinary notation on his transcript.  Pl.'s Mem. of Law at p. 7.
Plaintiff does not allege that he is currently seeking employment or applying to graduate
schools, or even that he may do so during the course of this litigation.  Thus, there is no
non-speculative indication that irreparable harm will inure to Plaintiff during the
pendency of this case; indeed, such a supposition is entirely speculative.  If Plaintiff
succeeds on the merits of his case, the notation may be removed from his transcript, and
he may be able to rely upon the Court's decision to explain a delayed graduation date to
potential employers.  In addition, it may be that Plaintiff's decision to take a medical leave
will already place him in a position of needing to explain why he will not have graduated
in four years, a fact that any injunction would not alter.

Plaintiff also alleges he will miss moving forward with his cohort and friends and
miss out on intangible experiences of college.  *Id.*  While such concerns are legitimate,
Plaintiff is already behind a semester due to his medical leave, and there is no allegation
or evidence that he would be able to move forward with his classmates if he were not
suspended for the fall semester.  Moreover, the suspension here will last only one
additional semester and does not preclude Plaintiff from returning to RPI in January.

Plaintiff's situation is readily distinguishable from cases such as *Doe v.
Middlebury Coll.*, where the plaintiff was expelled, not simply suspended, and had a job
offer that was contingent on his completing his degree.  The court found irreparable harm
because the plaintiff had a job offer to begin in less than a year, contingent on the

completion of his degree, which would be impossible to obtain if expelled. *Doe v. Middlebury Coll.*, 2015 WL 5488109, at *3 (D. Vt. Sept. 16, 2015). Plaintiff was a sophomore at RPI last year, Compl. at ¶ 7, and so is clearly in a different position academically. Here, Plaintiff has provided no details regarding what kind of job he may seek in the future, if he is currently seeking any jobs or internships, or if and when he intends to apply to graduate schools. Without this information, Plaintiff cannot allege that falling behind a semester or having the notation on his transcript pending the outcome of this case will cause an injury "that is neither remote nor speculative, but actual and imminent." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d at 114; *see Stockstill v. Quinnipiac Univ.*, 2010 WL 2011152, at *5 (D. Conn. May 19, 2010) (finding the plaintiff's "contention that missing classes for one semester will impede his future educational and career opportunities is purely speculative, as he has presented no evidence to support this contention").

In addition, Plaintiff remains on medical leave from RPI. Defendants explained at the hearing that in order to return from medical leave and become an active student, he would be required to apply to return. At the hearing, it was conceded that Plaintiff has not applied to return from his leave.[3] As such, even if the Court granted Plaintiff's Motion and enjoined RPI from suspending Plaintiff for the semester, as the situation currently stands Plaintiff would still not be able to return to school. This raises an additional issue as to whether the relief Plaintiff seeks can even prevent the harm threatened by the

---

[3] While Plaintiff suggested that his *persona non grata* status precluded him from making such an application, this suggestion is entirely conclusory. That status has not, for example, prevented Plaintiff from communicating directly with RPI staff regarding the underlying facts of this case. *See*, *e.g.*, Dkt. No. 19-3.

penalties imposed by Defendants. *See Buckingham Corp. v. Karp*, 762 F.2d 257, 262 (2d Cir. 1985) ("The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction."); *Marblegate Assset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp.3d 592, 606 (S.D.N.Y. 2014) ("[T]he Court should not grant the injunction if it would not so prevent that injury"); *see also Seto v. Thielen*, 2010 WL 2612603, at *2 (D. Hawai'i June 28, 2010) ("Given Plaintiffs' allegation that the septic system is currently leaking raw sewage into Kaneohe Bay, the requested injunction would not necessarily prevent irreparable harm to Plaintiffs, as the leaking of the raw sewage would continue with or without Kama 'aina Cares presence at the park. Under these circumstances, the court declines to issue the requested injunction.").

The Court finds Plaintiff has not satisfied the irreparable harm requirement, and therefore is not entitled to a preliminary injunction.

### 2.  Merits

Even were Plaintiff able to establish irreparable harm, Plaintiff's Motion fails to demonstrate that his claims have sufficient merit to warrant injunctive relief.

### a.  Title IX Claims

In the Second Circuit, a plaintiff may demonstrate a violation of Title IX by demonstrating either an erroneous outcome or selective enforcement.  To succeed on an erroneous outcome theory, the plaintiff "must demonstrate (1) articulable doubt [as to] the outcome of the disciplinary proceeding, and (2) that gender bias was a motivating factor behind the erroneous finding." *Doe v. Colgate Univ.*, 760 Fed. Appx. 22, 30 (2d Cir. 2019) (summary order) (internal quotation marks omitted) (citation omitted).  In

selective enforcement cases, "the claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Doe v. Syracuse Univ.*, 341 F. Supp.3d 125, 135 (N.D.N.Y. 2018) (internal quotation marks omitted).  Plaintiff asserts claims under each theory. *See generally* Compl.

"Under either theory, Plaintiff must plead and prove that the complained-of conduct was discriminatory.  Thus, in order to establish a claim of discrimination under Title IX, Plaintiff must ultimately show that the defendant discriminated against him because of sex; that the discrimination was intentional; and that the discrimination was a substantial or motivating factor for the defendant's actions." *Noakes v. Syracuse Univ.*, 369 F. Supp.3d 397, 413 (N.D.N.Y. 2019) (internal quotation marks omitted); *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *14 (N.D.N.Y. Feb. 24, 2016).  A plaintiff must plead particularized allegations of a causal connection between gender bias and the outcome. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (Title IX claims require pleading "particular circumstances suggesting that gender bias was a motivating factor" behind defendants' conduct).

Plaintiff contends that bias is evident because "vastly more men are accused of and found responsible for sexual misconduct at RPI than women and the number of men being accused of sexual misconduct has exponentially increased over the last three years."  Pl.'s Mem. of Law at p. 3.  In particular, 81% of the accused students are men and only 8% are women. *Id.*

Initially, "evidence of bias against the accused in sexual misconduct hearings does not equate to bias against men." *Doe v. Colgate Univ.*, 2017 WL 4990629, at \*11 (N.D.N.Y. Oct. 31, 2017), *aff'd*, 760 Fed. Appx. 22 (2d Cir. 2019) (collecting cases). Thus, even if Plaintiff could demonstrate that RPI was biased in favor of finding the accused guilty, that would not alone demonstrate that RPI was biased against men.   In addition, Defendants point out that in the past four years, 16% of cases have resulted in an informal resolution, 24% resulted in a finding of no policy violation, 29% resulted in a no policy violation because the complainant opted to not participate, and 31% resulted in a finding of a policy violation.   Defs.' Mem. of Law at p. 17.   These statistics undercut Plaintiff's argument: while RPI has no control over who files sexual assault complaints, they do have control over whether they find policy violations, and the statistics are not supportive of an argument that RPI has predetermined to find policy violations in all cases brought against men.

Plaintiff also argues that RPI's discriminatory intent is evident in the language of the Student Sexual Misconduct Bill of Rights.   Pl.'s Mem. of Law at pp. 3-5.   The language identified in Plaintiff's Motion does not reflect a discriminatory motive by RPI; this language is required by New York statute.   RPI Student Sexual Misconduct Policy and Procedures at pp. 4-5; NY. Educ. § 6443 ("Every institution shall adopt and implement the following . . . 'All students have the right to . . . Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations.'").   The language Plaintiff identifies in the Bill of Rights regarding retaliation is also the exact

- 19 -

language required by the statute.  *See id.*  Nothing in Plaintiff's submission demonstrates that this language was adopted to discriminate against men, rather than in order to comply with New York law.  Further, Plaintiff's argument that the policies do away with the presumption of innocence, Compl. at ¶ 74, is belied by the language of the Sexual Misconduct Policy itself – "the Respondent is presumed not to have violated the Policy unless and until there is a final determination of a Policy violation."  RPI Student Sexual Misconduct Policy and Procedures at p. 22.

In addition, Plaintiff contends the policy language favors complainants, who tend more often to be females; however, Plaintiff does not point to any language that makes assumptions regarding the gender of the complainant or respondent, or that are not facially gender-neutral.  As such, the language in the policies themselves do not allow for an inference of gender bias.  *Doe v. Colgate Univ.*, 2017 WL 4990629, at *14-15.  In addition, there is no evidence that RPI staff were trained to be biased against men; this is also undercut by the statistics indicating that a large proportion of investigations result in a finding of no policy violation.  *See Doe v. Colgate Univ.*, 760 Fed. Appx. at 31.  Finally, Plaintiff argues that RPI is inclined to find that men committed sexual misconduct as a result of community pressure.  Plaintiff articulates a number of bases for this contention in his Complaint, including that there were student protests and that Office of Civil Rights had investigated RPI; however, he provides no evidence to support these allegations, and Defendant Hardy has affirmed that there were no student protests and that OCR has not made any findings against RPI.  Hardy Aff. at ¶¶ 77-78.  The news articles Plaintiff

describes may support a plausible basis for a claim of bias; however, they alone do not confer enough merit on the claims to warrant a preliminary injunction.

As for Plaintiff's selective enforcement claim, in addition to demonstrating a discriminatory motive or intent, Plaintiff must demonstrate that "a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 641 (6th Cir. 2003); *see also Curto v. Smith*, 248 F. Supp. 2d 132, 146-47 (N.D.N.Y. 2003).   There must be a "meaningful inconsistency" in the way the comparators are treated.  *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *18.   "To consider a student similarly situated, the individuals with whom a plaintiff seeks to be compared *must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it." *Saravanan v. Drexel Univ.*, 2017 WL 5659821, at *6 (E.D. Pa. Nov. 24, 2017) (emphasis in original); *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 403-04 (W.D.N.Y. 2017) (in the disciplinary context, a selective enforcement claim would require "members of the opposite sex facing comparable disciplinary charges.").

Plaintiff alleges that the Complainant's complaint of sexual assault was investigated promptly and thoroughly, while his complaint of retaliation was not.[4]  The Court is not convinced that the Complainant's complaint of sexual assault and Plaintiff's

---

[4] At oral argument, it was acknowledged by Plaintiff's counsel that the time period in which Plaintiff's allegation was resolved was similar to the time to resolve the misconduct allegations made by Jane Roe #1.  RPI, notes, however that at the time of the investigation of Plaintiff's complaint, Plaintiff was already off campus which changed the dynamic and urgency of that investigation.  *See* Hardy Aff. at ¶ 115.

complaint of retaliation are "sufficiently similar" for purposes of a comparator analysis. *See Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017) (finding no selective enforcement claim where the plaintiff alleged defendant treated a female more favorably in disciplining her for confrontations on campus and social media following an alleged sexual assault than it treated him regarding the alleged sexual assault); *Saravanan v. Drexel Univ.,* 2017 WL 5659821, at *6 (finding no selective enforcement claim pled where one student was charged with stalking and sexual harassment and the other was charged only with sexual harassment); *Doe v. Univ. of Scis.*, 2019 WL 632022, at *5-6 (E.D. Pa. Feb. 14, 2019) (finding individual accused of sexual assault and accuser who allegedly breached confidentiality regarding the investigation were not comparators, and denying preliminary injunctive relief); *but see Doe v. Rollins Coll.*, 352 F. Supp.3d 1205, 1211-12 (M.D. Fla. 2019) (finding a plausible selective enforcement claim where plaintiff alleged he was treated less favorably in the investigation of a sexual assault claim against him than a female student was in the investigation of a retaliation claim against her). The majority of courts require a comparator to be very similar to the plaintiff; Plaintiff has not alleged such a comparator here.

The Court finds that on the record presently before it, Plaintiff has not met either his burden as to the likelihood of success on the merits or the fair ground for litigation threshold for his Title IX claims.

### b.  Breach of Contract Claims

Plaintiff's breach of contract claims, on the other hand, meet the fair ground for litigation standard.  In particular, there appear to be viable questions as to whether RPI "substantially complied" with its policies (1) in handling Plaintiff's retaliation complaint; (2) that it not consider past sexual history of a respondent; and (3) that the respondent be permitted to review the Investigative Record.  *See Routh v. Univ. of Rochester*, 981 F. Supp.2d 184, 208 (W.D.N.Y. 2013).

However, the balance of the hardships is not "decidedly" in Plaintiff's favor.  The Court recognizes the potential impact that missing a semester of college and having a disciplinary notation on a transcript could have on a student.  However, as discussed above, Plaintiff has not initiated the process to apply to return to RPI from his leave status. As such, if RPI were enjoined from enforcing Plaintiff's suspension, as it currently stands, Plaintiff would still not be able to return to RPI.  In addition, Plaintiff has not provided any allegations that he seeks to apply to a job, internship, or graduate school in the near future, upon which the disciplinary notation could have an adverse effect.  Plaintiff has not demonstrated any concrete hardships he faces in the absence of an injunction.  As such, Plaintiff cannot meet the fair grounds for litigation standard with its attendant balance of hardship requirement.

Finally, the Court notes that Plaintiff has not demonstrated that granting the Motion would serve the public interest.  By requiring RPI to remove the notation on Plaintiff's transcript, the Court would be requiring RPI to provide Plaintiff with a transcript that may not be completely accurate, and may harm the public's interest "in

ensuring that any institution to which Plaintiff[] submit[s] a transfer application has a complete picture of Plaintiff[']s[] experience while [he was] enrolled as [a] student[]." *Doe #1 v. Syracuse Univ.*, 2018 WL 3193199, at *6 (N.D.N.Y. June 28, 2018).

Plaintiff's Motion for a Preliminary Injunction is therefore denied.

### III. DEFENDANTS' MOTION TO DISMISS

The Complaint asserts four causes of action – two alleging Title IX violations and two asserting state law breach of contract claims.  Compl. at ¶¶ 252-90.  The named Defendants are RPI and five individuals employed by it.  *Id.* at ¶¶ 20-29.  The individual Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state a claim as to them.  Dkt. No. 15.  Plaintiff has responded to the Motion, Dkt. No. 21, and Defendants have filed a Reply.  Dkt. No. 22. For the reasons that follow, the Motion is granted.

### A. Standard for Dismissal under Rule 12(b)(6)

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "the court reads the facts alleged in the complaint, assumes the truth of those facts, and decides whether those facts state a claim under the applicable legal standard." *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 235 (2d Cir. 2015).  In doing so, the court draws all inferences in favor of the plaintiff.  *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  However, "the tenet that a court must accept as true all of the

allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B. Plaintiff's Title IX Claims

The individual Defendants first seek dismissal of the claims brought under Title IX on the ground that the statute does not provide for individual liability. Dkt. No. 15-1, Defs.' Mem. of Law on Motion to Dismiss, p. 2. This argument is consistent with the vast weight of authority addressing the question. The Supreme Court has noted that "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). District courts in the Second Circuit have consistently reached the same conclusion. *See*, *e.g.*, *Wolff v. State Univ. of New York Coll. at Cortland*, 2016 WL 9022503, at *24 (N.D.N.Y. Feb. 5, 2016); *Romero v. City of New York*, 839 F. Supp. 2d 588, 616 (E.D.N.Y. 2012); *Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 426-27 (S.D.N.Y. 2008) (citing cases); *Walter v. Hamburg Cent. Sch. Dist.*, 2007 WL 1480965, at *8 (W.D.N.Y. May 18, 2007).

Plaintiff acknowledged this weight of authority, both in his response and at oral argument, and cites no case holding to the contrary. *See* Dkt. No. 21, Pl.'s Mem. of Law on Motion to Dismiss, p. 2. Plaintiff instead offers an admittedly novel argument that the individual Defendants should be considered "qualifying entities and federal funding recipients themselves, and thus subject to individual liability under Title IX." *Id.*

"Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).  In Plaintiff's view the passage of the Civil Rights Restoration Act of 1987, which sought to expand the reach of Title IX, justifies finding a basis for individual liability because the salaries these individuals receive for their work at RPI provides the necessary nexus between them and the federal funds RPI receives.  Pl.'s Mem. of Law on Motion to Dismiss at pp. 2-4.  Here, too, however, Plaintiff can cite to no case adopting this view.  For many of the reasons set forth in Defendants' Reply Mem. of Law, Dkt. No. 22, the Court is not persuaded by Plaintiff's arguments and, consistent with the great weight of authority, concludes that there is no basis for finding individual liability under Title IX.  The individual Defendants, therefore, are dismissed as Defendants to Plaintiff's Title IX claims.

### C. Plaintiff's Breach of Contract Claims

The individual Defendants also seek dismissal of Plaintiff's breach of contract claims against them on the ground that breach of contract claims brought by students lie only against their college or university, not individual employees of the college.  Defs.' Mem. of Law on Motion to Dismiss at pp. 3-4 (citing cases).  In response, Plaintiff concedes that RPI is the sole proper Defendant as to the breach of contract claims.  Pl.'s Mem. of Law on Motion to Dismiss at p. 1.

For these reasons, the Complaint is dismissed in its entirety as to the individual Defendants.

### IV.  CONCLUSION

**ACCORDINGLY**, it is

- 26 -

ORDERED, that Plaintiff's request to proceed under pseudonym is **GRANTED**; and it is further

ORDERED, that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is **DENIED**; and it is further

ORDERED, that Defendants' Partial Motion to Dismiss is **GRANTED**; and it is further

ORDERED, that Defendants Elizabeth Brown-Goyette, Larry Hardy, Travis Apgar, LeNorman Strong, and Peter Knowerski are **DISMISSED** as Defendants in this action; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated:  August 21, 2019
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge